UNITED STATES (SIX HUNDRED AND FIFTY-ONE CHESTS OF TEA v.). See Case No. 12,916.

## Case No. 16,297.

### UNITED STATES v. SIX HUNDRED AND SIXTY-ONE BALES OF TOBACCO.

[24 Int. Rev. Rec. 77.]

District Court, S. D. New York. Feb. 21, 1878.

CUSTOMS DUTIES—FRAUDULENT ENTRIES — FORFEITURE—FALSE AFFIDAVIT OF DAMAGE—EVIDENCE OF INTENT—PRESUMPTIONS—BURDEN OF PROOF.

[1. In a proceeding to enforce a forfeiture under the 12th section of the act of June 22, 1874 (18 Stat. 188), for making, or attempting to make, an entry by means of any false or fraudulent invoice, affidavit, etc., it is immaterial whether the purpose to make a fraudulent entry is carried out or not. An attempt by the means stated, with intent to defraud, completes the ground of forfeiture.]

[2. The making of an affidavit of damage is a part of the entry, so that if such affidavit be false, and be made with intent to defraud the revenue, it is within the provision of the above section, and is sufficient to incur a forfeiture.]

[3. An affidavit of damage, untrue in fact, and made without such personal inspection and examination as to warrant the affiant in saying that he had personally inspected and examined the whole of the merchandise, or to warrant him in saying that it had sustained damage on the voyage of importation, is a false affidavit, in the meaning of the statute.]

[4. If an affidavit of damage is in fact false, the jury are authorized to presume an intent to defraud the revenue, and the burden is on the claimant to satisfy them, by a fair preponderance of evidence, that he had no such intent.]

[5. If it be shown that an affidavit made in course of entering merchandise was in fact false, then evidence of other fraudulent transactions, in connection with other entries of goods by the same claimants, may be considered, not for the purpose of proving the body of the offence, but for the purpose of characterizing the intent with which the act was committed.]

[6. In order to incur a forfeiture of goods imported by a partnership, it is not necessary to show that both partners participated in the illegal act or acts charged. It is sufficient to show that one of them was guilty thereof.]

[7. It is not necessary, in order to obtain an allowance for damage to part of a consignment of merchandise, that the claimant should make an affidavit that the entire importation was damaged.]

[8. Where probable cause of seizure is shown, the burden is on the claimants to show, by a fair preponderance of evidence, that the illegal acts charged were not committed.]

[9. Cited in U. S. v. Nine Trunks, Case No. 15,886, to the point that in proceedings to forfeit goods for fraudulent importation, the goods themselves, and not the importer, are regarded as the offender, and that the claimant is a mere voluntary intervenor.]

[This was an information of forfeiture against 661 bales of tobacco, of which Weil & Co. were claimants, charging a violation of the laws in relation to fraudulent entries at the customhouse.]

Roger M. Sherman, Asst. U. S. Atty.
Ethan Allen, for claimants.

THE COURT (charging jury). We have been engaged, gentlemen, now for eleven days, in the investigation of this important cause—important to the government, important to the claimants, and involving as important questions respecting the transactions of these merchants with the government on the other side, as can be involved in any suit coming before a court and a jury in this court. Nearly eleven years ago, when I commenced my judicial labors in this court, the first case that I tried was a case of seizure of merchandise for alleged frauds in the entry of it at the custom house, and during my judicial labors in this court I have tried a very large number of such cases; and this case, to all appearances the last jury cause. connected with the revenue of the government which I shall try in this court, is a case of the same character. I allude to this only to show that these cases are cases which have received, in the principles which govern them, and in the application of those principles to the circumstances of a given case, a great deal of consideration in this court. The principles which govern a case like this are well settled in the jurisprudence of the United States, not only in this court but by the adjudications of the supreme court of the United States in review of such questions. And in laying this case before you, I have to say, first, that I recognize in you, and in the attention you have given to this cause, an understanding and an appreciation of the questions of law and of fact involved in this case which will enable you without difficulty to possess your minds of the points to which you will have to address your attention. I shall not comment upon the evidence in the case. You have listened to it, it has been laid before you slowly, carefully, patiently, and thoroughly by the eminent and assiduous counsel on both sides of this case, and it has been spread before you in a compact manner in their addresses to the jury. I shall content myself with putting before you the legal principles which govern such cases generally. and the legal principles which govern this case in particular, and in such order as I hope will enable you to apply the evidence to the case as I go along, without any difficulty. In the first place, gentlemen, I shall bring to your attention the statute under which this forfeiture of these 661 bales of tobacco is claimed by the government; and I shall refer you only to the 12th section of the act of June 22, 1874 (18 Stat. 188). That section is a re-enactment, to all substantial intent, so far as this case is concerned, of a previous statute, the first section of the act of March 3, 1863 (12 Stat. 737), and is to this effect—That "if any owner, importer, consignee, agent or other person"—any person —"shall, with intent to defraud the revenue,

make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, affidavit, letter or paper, or by means of any false statement written or verbal," or "shall be guilty of any wilful act or omission by means whereof the United States shall be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper or statement, or affected by such act or omission," he may be indicted and punished criminally, and "in addition" "such merchandise shall be forfeited." You will perceive that this penalty is imposed not only for the making of an entry by means of any fraudulent or false affidavit or paper, but for an attempt to make it. So, likewise, if the entry be made by means of the fraudulent or false affidavit or paper or false written or verbal statement, and the intent to defraud the revenue exists, it is immaterial whether the party is successful or not in what he thus undertook. If he makes the entry, or attempts to make it, by those means and has that intent, then, though his plan may be nipped in the bud, the forfeiture takes place. This statute, which is but a re-enactment of provisions of law which have been in force on the statute book of the United States from the earliest revenue act that was enacted in the year 1789 (1 Stat. 42, § 22), is a part of a fixed policy of the government, thought to be necessary by the wise framers of the first series of revenue statutes that were enacted by congress, and since maintained by the judgment and wisdom of congress, as the exponent of the judgment and will of the people of the United States. Provisions of this kind are found necessary, absolutely necessary, and they are enforced by the courts for the protection of you, gentlemen, as honest merchants, in your business; and without such provisions you could not do business in your callings, so far as you have anything to do with the importation of merchandise, and, in other respects, even though not directly connected with the importation of merchandise, in so far as your business may be affected by such transactions, you could not do an honest business unless there were these stringent rules to compel people to observe the law.

It is alleged in this case that this house of Weil and Company, acting through one or the other of the gentlemen composing it— Mr. Baer and Mr. Aron—has been guilty of what is denounced in this statute which I have read to you, in such wise as to warrant and call for a forfeiture of these 661 bales of tobacco. It is claimed by the government that Mr. Baer, as a part of this entry—and the court charges you, as matter of law, that the acts or omissions relied upon by the government in this case are a part of the entry of the merchandise. a part of the passage of the merchandise through the cus-

tom house, a part of the passage of the merchandise through the hands of the officers of the government, until it reaches the body of merchandise for consumption in the country, a part of the machinery for the ascertainment of the proper duties to be paid upon the merchandise, whether it should pay on the full weight of the bales of tobacco, so many pounds, at 35 cents a pound, or whether it should pay on a less number of pounds, because of damage on the voyage, all that is a part of the entry of the merchandise—it is claimed by the government that this house, with intent to defraud the revenue, made this entry, or a part of this entry, a step in this entry, by means of a fraudulent or false affidavit of damage. It is also claimed that this house has been guilty of a wilful omission after the allowance of damage, knowing that the allowance was a false and fraudulent one, a wilful omission to inform the government, and that by means of that omission the government has been defrauded of a part of the lawful duties accruing upon the merchandise in question. In the oath which he took on the back of the original entry, Mr. Aron, one of the claimants, swore as follows: "I solemnly and truly swear that this entry, now delivered by me to the collector, contains a just and true account of all the merchandise embraced in the invoice; and I further swear that I have not in the said entry or invoice concealed or suppressed anything whereby the United States may be defrauded of any part of the duty lawfully due on said goods, wares and merchandise; and that if at any time hereafter I discover any error in the said invoice or in the account now rendered of the said goods, wares and merchandise, or receive any other invoice of the same, I will immediately make the same known to the collector of this district." This oath was taken on the 6th of June, 1876. The affidavit of Mr. Baer for the damage allowance was made on the 13th of June, 1876. The oath of Mr. Aron refers to the entry and invoice which he then was presenting at the custom house. It refers to the entry, upon the back of which it is endorsed. It refers to the invoice annexed; and the oath is to the effect that that entry and that invoice are true, and that he has not in them suppressed or concealed anything whereby the United States may be defrauded of any part of the duties lawfully due on the goods; and that if at any time thereafter he shall discover any error in the said invoice or in the account then produced of the said goods, wares, and merchandise, or receive any other invoice of the same, he will immediately make the same known to the collector of this district. The act of 1874 says that if any one shall attempt to make an entry by means of any false affidavit or statement, or shall be guilty of any wilful act or omission, by means whereof the United States shall be deprived of the lawful duties on the goods, they shall be forfeited. I do not hold, as a proposition of law, that if this was a fraudulent claim, the omission, after the damage allowance, to make the fraud known to the government, was an omission of what Mr. Aron was required by this oath of his to do; but I charge you that, irrespective of that oath, irrespective of any obligation taken by Mr. Aron in that oath, casting that aside entirely, if this was a false damage allowance, a fraudulent damage allowance, then the affidavit taken by Mr. Baer was false. But if you shall be of opinion, upon the evidence, that Mr. Baer was warranted, from the examination which he made, in saying, and that he did say, in good faith, believing it to be true, that the whole of the merchandise had sustained damage on the voyage of importation, then it was not a false affidavit. And, if you shall believe, from all the evidence in the case, that Mr. Baer had not given to the merchandise such a personal inspection and examination as to warrant him in saying that he had personally inspected and examined the whole of it, or to warrant him in saying that the whole of it had sustained damage on the voyage of importation, and that he did not and could not have made this affidavit in good faith, having reasonable cause to believe that its contents were true, then it was a false affidavit. If you shall come to the conclusion that it was false, then you have a right to presume that it was made with an intent to defraud the revenue of the United States, because, tobacco being subject to so many cents duty upon the pound, if the number of pounds to be multiplied by the rate of duty were to be fraudulently diminished by the proceedings based on this affidavit, if there was no damage when Mr. Baer asserted that there was, you are authorized to infer, and the legal presumption is, that he had an intention to accomplish the result which the affidavit tended to accomplish, of getting in the whole of the tobacco, it being sound, at a less number of pounds than it actually weighed, and thus depriving the government of the duty on the difference. In such case you are authorized to presume that there was an intent to defraud the revenue; and it will be for the claimants to satisfy you, by a fair preponderance of evidence, that they had no intent to defraud the United States. If, under the observations which I have already laid before you, you shall come to the conclusion that there ought to be a verdict for the plaintiffs, it is not necessary, in order to give that verdict, that you should believe that Mr. Kelly and Mr. Hamilton were corrupted, or that there was any unlawful intimacy or collusion between them and any member of the house of Weil and Company. If, upon the evidence, you find such guilty intent on the part of Mr. Baer or Mr. Aron, it is no matter in what way they calculated

or expected that that intent might be accomplished—whether they relied upon direct communication, collusion, or intimacy with, or corruption or bribery of, Mr. Kelly or Mr. Hamilton, or any one else, or whether they relied upon anything that they may have been acquainted with in the movements inside of the custom house, ignorance, inattention, incapacity, negligence; non-observance of rules—it is immaterial, as long as such intent existed, how they expected. or calculated that that intent should be carried out. So, also, the fact that, for the purpose of getting these goods into the warehouse, these claimants had to give a bond for the duties, is wholly irrelevant to any question in this case. It is not a matter for consideration on the one side or on the other. Moreover, any comments which have been made in regard to the policies of insurance, are out of this case, and are not to be taken into consideration by you. And, so, in regard to any claim, under the bill of lading, against Alexander and Company, that is not a circumstance to be taken into consideration by you. You will throw out entirely the policies of insurance, the bill of lading, the claim against Alexander and the bond.

There has been introduced into this case, as bearing upon this question of intent on the part of the claimants, and with a view of enabling you to judge of what intent they had in this transaction, some evidence as to their transactions in other matters—the suit here, the judgment record in which was read to you; the suit in San Francisco; and the evidence of Mr. Covert as to his conversations with Mr. Baer about merchandise on storage, on a previous occasion. Such evidence is evidence, under the decisions of the supreme court of the United States, not for the purpose of proving the body of the offence, the corpus delicti, the guilty act, in the case on trial before you, but for the purpose of characterizing the intent with which a given act may have been done. In other words, it is evidence not for the purpose of showing the falsity of the damage allowance in this case, not for the purpose of showing the falsity of the oath taken by Mr. Baer; but, if you find that the damage allowance was false, if you find that such oath was false, such evidence is evidence for the purpose of enabling you to arrive at a conclusion upon the other branch of the question, as to the intent with which the oath was made, or the damage allowance was procured, upon the oath. In regard to the judgment record in New York, in regard to the suit in San Francisco, in regard to any testimony of Mr. Covert or any other person bearing upon any question of the transactions in other cases by Weil and Company alleged to have been fraudulent, you are to take into consideration, if you should reach the question, all the evidence on both sides in regard to them, the explanations made to you by Mr. Baer and the testimony of Mr.

Aron, in so far as they gave any, in regard to the New York transaction, and the San Francisco transaction, and in regard to any conversation with Mr. Covert. You are to take all the testimony as you understand it, and the explanations made, as to whether they are or are not satisfactory to you, and give to the transactions in New York and San Francisco, and the other matters, such weight as, on the whole evidence, affirmative and explanatory, you shall think they are entitled to, in applying them to the question both of the credibility of Mr. Baer and Mr. Aron, and the question of the intent of Mr. Baer and Mr. Aron in the transactions in regard to the 661 bales of tobacco. So, also, it is not necessary, in order to enable you to find for the government that you should find that both of the claimants participated in the illegal acts charged. If any person does so and so, in regard to goods, the goods are forfeited. In all these statutes the merchandise is personated, the merchandise is called the offender; and, if any person does, in regard to that merchandise —and, for the purposes of this case, I will limit it to any person lawfully connected with the merchandise—if any person does the forbidden acts, the merchandise is forfeited. It is not like an indictment in a criminal case, where personal guilt must be brought home to the individual, and where he is not responsible criminally for the acts of another; but, in this case and in all cases of this kind, the merchandise is responsible for the forbidden act of any person connected with it. In the same view, it is not necessary to find that both of the claimants had an actual intent to defraud the United States, if one of them had such intent—if either of them had it. It has been very properly asserted to you by the counsel for the defence, that he does not question the proposition on the part of the government, that the oath taken by Mr. Baer on the damage application is an oath of equal dignity, and imposes an obligation of equal gravity, with any other oath, lawfully taken, with the oath which each of you has taken in this case, and that there is to be no distinction drawn between this oath, as a custom house oath, and any other oath lawfully taken in the course of a lawful proceeding. I am requested to charge you, and I do charge you, that the law did not make it necessary, in order to enable Weil and Co. to obtain a lawful allowance for damage as to some of their merchandise, if some only were damaged on the voyage of importation, that Mr. Baer should subscribe an oath that the entire 661 bales were damaged on the voyage of importation; because, the statute and regulations provide for the means of designating and individualizing by numbers the particular bales in regard to which an application for damage allowance is made.

I believe, gentlemen, that I have called your attention to all the principles of law which

you are to apply to the evidence in this case; and that I have covered in my charge, either affirmatively or negatively, all the propositions laid before me by the counsel on either side, which are material to this case, or which are raised by the evidence; and I am to be considered as declining to charge in regard to the requests on both sides otherwise than as I have charged in regard to them in what I have said to you.

There is but one other point which it is my duty to lay before you, and that is this: I am required to submit to you, as a distinct and separate proposition, whether the alleged acts charged to have been done in this case— if you shall find that they were done—if you shall find that the affidavit of Mr. Baer was false, in the sense in which I have explained the word "false" to you, in connection with such affidavit—if you shall find that the damage allowance was false, then I am required to submit to you whether these alleged acts were done with an actual intention to defraud the United States; and I am directed by the statute to require from you, upon that proposition, a special finding. Whichever way you find, whether you find for the United States or for the claimants, you are also to find either that the acts alleged in the information were done with an actual intention to defraud the United States, or that they were not done with an actual intention to defraud the United States. Of course, you are only to render such a verdict in case you find that the alleged acts were done. If you find that they were not done, there is nothing for you to find on the question of intent. The statute goes on to say, that, unless the jury shall find an intent to defraud, the court has no authority to impose a forfeiture. Hence this proposition on the part of the claimants is a correct proposition—that, if you shall find any act or acts on the part of the claimants, or either of them, to have been done, tending in their results to defraud the United States, you must find that such act or acts were done with an actual intention to defraud the United States, and, unless you find such actual intention to defraud the United States, your verdict will be for the claimants. But, in considering the questions in this case, you are to bear in mind that there is probable cause for the prosecution, and that the burden of proof is on the claimants, to satisfy you by a fair preponderance of evidence, that this entry was not made or attempted to be made by a false affidavit, and that there was no wilful omission by means of which the United States has been deprived of any lawful duty on any of this merchandise.

I understand the position of the district attorney in regard to this whole question to be, upon the evidence, that there was no damage to this tobacco on the voyage of importation; that whatever damage there was, whatever damaged tobacco may have been picked out or culled out in the warehouse of Mr. Foster, and whatever the damage was that any witnesses have testified they saw in it, was not damage that occurred on the voyage of importation; that there was not a particle of damage sustained by this tobacco on the voyage of importation, no matter what damaged state it may have been in, in point of fact, when it was landed here; and that the damage occurred at another time and at another place than on the voyage and on the vessel. The opposite of that contention is claimed on the part of Weil and Company. In considering this entire question you will bear in mind the law upon the burden of proof; and you will bear in mind also that the damage spoken of throughout, in the statute, in the application, in the affidavit of Mr. Baer, and in the appraisement, is damage on the voyage of importation and damage no where else.

The report of the appraisers in this case is dated the 8th of July, 1876. "Appraiser's office, 8th July, 1876: To the collector of customs: In pursuance of your order we have examined the following described merchandise, and do certify that the same has sustained damage on the voyage of importation" —not that the same is damaged, but that the damage visible, the damage found, is damage sustained on the voyage of importation— "as follows, to wit: W. and C. 35 bales of tobacco rate of damage, 50 per cent.; 60 bales of tobacco, 40 per cent.; 75 bales of tobacco, 30 per cent.; 130 bales of tobacco, 20 per cent.; 170 bales of tobacco, 15 per cent.; 191 bales, including P. S." (public store) "bales, no damage allowed. Cause: sea water and heat of vessel. Effect: mouldy, musty, sweated, loss of strength, and flavor destroyed. Satisfactory evidence of sound shipment stencilled 7-8. Theodore P. Kelly, Geo. W. Hamilton. W. Allen, Assistant Appraiser. Approved, S. B. French, Appraiser." That is all the contents of that paper which were on it when it left the appraiser's office. The figures in red ink are figures put on afterwards in applying the percentage of damage reported, to the bales, to arrive at the number of pounds of sound tobacco on which to impose the duty. I believe that these are all the observations which it is incumbent upon me or proper for me to make in this very important cause. You will have before you these two papers, the application and affidavit for damage allowance and the appraiser's report. You will give a careful consideration to all the evidence, under the rules of law which I have laid down, and as you shall find in accordance with those rules, such will be your verdict. I commit the case now into your charge.

A juror.—There is one point on which I did not clearly understand your honor. In case this tobacco was damaged partially before it left Havana, do I understand that a further damage on the voyage of importation is to be considered, under the law, as damage on the voyage of importation.

THE COURT.—I do not think, gentlemen, that there is any evidence in the case upon which any such question as that put by the juror legitimately arises in the case. The district attorney claims that there was not a particle of damage on the voyage of importation, while the claimants insist that the whole damage which they have proved, if they have proved it, occurred on the voyage of importation.

The jury did not agree on a verdict.